IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  05-CV-805-WYD-PAC

ROBERTO A. DAVIS,

    Plaintiff(s),

v.

POST TENSION OF NEVADA, a Nevada corporation,

    Defendant(s).

---

## ORDER

---

THIS MATTER is before the Court on Defendant's Motion to Dismiss or for Summary Judgment as to Second Amended Complaint and Motion to Strike, filed November 30, 2005 (docket #59) ("Motion").  Plaintiff filed a Response to the Motion ("Response") and a Request for Judicial Notice on December 22, 2005.  Defendant filed a Reply on January 19, 2005 ("Reply").  I first address the background of the case and then state my rulings on the Motion.

I.    <u>INTRODUCTION AND BACKGROUND</u>

This case arises out of Plaintiff's employment with Defendant.  As set forth in Plaintiff's Second Amended Complaint and Jury Demand, filed October 24, 2005 ("Complaint"), Plaintiff commenced employment with Defendant in the position of laborer on August 1, 1989, and was promoted to the position of Area Manger in 2000.[1]

---

[1] Except for a period in 1993 when Plaintiff was recovering from injuries sustained in an automobile accident, Plaintiff worked for Defendant from 1989 until his

*Second Am. Comp*. ¶¶ 10, 20.  Plaintiff alleges that during the course of his employment he was given verbal commendations about his performance, received promotions and pay increases, and received bonuses for performance in 1998, 1999, 2000, 2001, 2002, and 2003.  *Second Am. Comp*. ¶¶ 13, 14, 18, 20-26.  According to Plaintiff he was never disciplined or criticized for his job performance, was never written up for any performance issues prior to his termination, and was told he was doing a good job and that his employment would continue.  *Second Am. Comp.* ¶¶ 22-26.

On January 20, 2003, Plaintiff suffered a severe laceration to his right elbow and arm after his right arm went through a window.  *Second Am. Comp.* ¶ 31.  Plaintiff filed a claim for workers' compensation benefits in connection with the accident.  According to Plaintiff, he was taken off work for two weeks to recuperate from surgery following the accident, but returned to work early on January 23, 2003.  *Second Am. Comp*. ¶ 32.  Plaintiff states that as a result of the injuries he sustained to his right hand he became physically limited.  Upon return to work, he requested assistance with his job duties, but was not given assistance.  *Second Am. Comp.* ¶¶ 34-35.  On or about February 16, 2004, Defendant transferred another individual to its Denver office to replace Plaintiff.  Plaintiff underwent a second surgical procedure on March 30, 2004, and on April 23, 2004, Plaintiff was terminated from his employment.  *Second Am. Comp.* ¶¶ 38-41.

Defendant's workers' compensation insurer contested Plaintiff's claim and a hearing before an Administrative Law Judge took place on or about August 17, 2004.  Plaintiff alleges that at the conclusion of the hearing, the Administrative Law Judge

---

termination on April 23, 2004.  *Second Am. Comp*. ¶ 16.

found that the testimony of Ed Hohman, President of Defendant Post Tension of Nevada, was not credible and that Plaintiff's termination was pretextual. Plaintiff requests that I take judicial notice pursuant to Fed. R. Evid. 201(e)(2) of the adjudicative facts related to his pending workers' compensation claim in resolving the issues raised in Defendant's Motion. *Second Am. Comp.* ¶¶ 52-54.

Plaintiff contends that he was terminated by Defendant because of his disability or perceived disability, and because he was receiving workers' compensation benefits. Plaintiff brings claims under the Americans with Disabilities Act ("ADA") for failure to accommodate, as well as state law claims for breach of contract, promissory estoppel, breach of implied contract, discharge in violation of public policy, and extreme and outrageous conduct.

II.   ANALYSIS

Defendant moves to dismiss all of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). Defendant also moves, pursuant to Rule 12(f) to strike Plaintiff's requests for compensatory, punitive, and other non-pecuniary damages set forth in Plaintiff's second, third, fourth and fifth claims for relief. Defendant submitted Affidavits of Ed Hohman, President of Defendant Post Tension of Nevada, Inc., and Kard Ford in support of its Motion. In Response to the Motion, Plaintiff submitted numerous exhibits containing matters outside the pleadings. Pursuant to the Federal Rules of Civil Procedure, if matters outside the pleadings are presented to and not excluded by the Court, a motion to dismiss pursuant to Rule 12(b)(6) shall be treated as a motion for summary judgment. Fed.R.Civ.P. 12(b); *Lucero v. Gunter*, 52 F.3d 874, 877 (10th Cir.

1995).

The Court finds that it is appropriate to consider the matters outside of the pleadings that were presented by the parties in resolving Defendant's Motion; accordingly, Defendant's Motion shall be treated as a Motion for Summary Judgment.

    A.    <u>Request for Judicial Notice</u>

As an initial matter, I address Plaintiff's requests that I take judicial notice, pursuant to Fed. R. Evid. 201, of the adjudicative facts related to his pending workers' compensation claim in resolving the issues raised in Defendant's Motion.

"Judicial notice is an adjudicative device that alleviates the parties' evidentiary duties at trial, serving as a substitute for the conventional method of taking evidence to establish facts." *York v. AT&T*, 95 F.3d 948, 958 (10th Cir. 1996). "Judicial notice is appropriate where a matter is 'verifiable with certainty.'" *Id.* (quotation omitted). Judicial notice is also appropriate when the nature of the truth of certain facts "are not properly the subject of testimony, or which are universally regarded as established by common knowledge", in other words, "facts [that] are not subject to reasonable dispute." *Meredith v. Beech Aircraft, Inc.*, 18 F.3d 890, 895 (10th Cir. 1994). If the fact must be established through the presentation of evidence, it is not capable of being judicially noticed. *Id.* Judicial notice replaces the evidentiary procedure that would otherwise be necessary to establish 'adjudicative fact[s]' that are generally known or 'capable of accurate and ready determination' by resort to other reliable sources." *York*, 95 F.3d at 958 (quoting Fed.R.Evid. 201(b)).

Here, the information contained in the ALJ's Findings of Fact and Conclusions of

Law, and Order, dated September 22, 2004, which was issued following a hearing on Plaintiff's workers' compensation claim, is not appropriate for judicial notice. The facts surrounding Plaintiff's workers' compensation claim, as well as the factual findings of the ALJ, can be "established through the presentation of evidence." These are not facts that are "generally known" or "capable of accurate and ready determination." Therefore, Plaintiff's Request for Judicial Notice, filed December 12, 2005, is **DENIED**.

### B.      Motion for Summary Judgment

Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, [the court must] 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Id.* (quotation omitted).

### 1.      ADA Claim

Defendant first seeks dismissal of Plaintiff's claim under the ADA for failure to exhaust administrative remedies.

Exhaustion of administrative remedies under the ADA is a jurisdictional prerequisite to suit. *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1105 (10th Cir. 2002); 42 U.S.C. § 12117(a). A plaintiff may not bring an ADA action based on claims that were not submitted to the EEOC as part of a timely filed EEOC charge for which the plaintiff has received a right-to-sue letter. *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326-27 (10th Cir.1999). A charge of discrimination is timely if it is filed with the Equal Employment Opportunity Commission ('EEOC') within 300 days after the alleged unlawful discriminatory practice occurred. *Bullington v. United Air Lines, Inc.,* 186 F.2d 1301, 1310 (10th Cir. 1999). The charge of discrimination tells the EEOC what to investigate, provides it with the opportunity to conciliate the claim, and gives the charged party notice of the alleged violation. *See Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir.1997). Thus, requiring a plaintiff to have first presented his claims in his EEOC charge before being allowed to bring suit serves the dual purposes of ensuring the EEOC has the opportunity to investigate and conciliate the claims and of providing notice to the charged party of the claims against it. *Seymore*, 111 F.3d at 799. The charge of discrimination must be filed under oath. 42 U.S.C. § 2000e-5(b) (charge must be filed under oath or affirmation); *see also Hodges v. Northwest Airlines, Inc.*, 990 F.2d 1030, 1032 (8th Cir. 1993); *Sparkman v. Combined International*, 690 F. Supp. 723 (N.D. Ill. 1988).

Plaintiff concedes that he has never received a notice of right to sue with respect to his ADA claim, but asserts that he has substantially complied with the exhaustion

requirement by timely filing a charge of discrimination with the EEOC. In support of this assertion, Plaintiff submits an affidavit from his attorney, Timothy L. Nemechek, dated December 22, 2005. Mr. Nemechek states in the affidavit that Plaintiff met with an investigator from the EEOC and filed a formal charge of discrimination on May 17, 2004, but that based on an investigation conducted by his office, it "appears" that the EEOC administratively closed Plaintiff's file without sending him a notice of right to sue. Mr. Nemechek then states that upon information and belief, Plaintiff never received any written communication from the EEOC. Mr. Nemechek further states that he has requested that the EEOC issue a notice of right to sue so that the same can be provided to the Court in a supplemental filing. Plaintiff also submits, as Exhibits, a Charge of Discrimination, signed by Plaintiff and dated May 17, 2004, which is not notarized and does it contain any markings which would indicate it was filed with the EEOC or the Colorado Civil Rights Division, and an EEOC intake questionnaire, signed by Plaintiff and dated May 17, 2004. To date, Plaintiff has not filed any supplement to his Response.

Defendant objects to Mr. Nemechek's affidavit and contends that it is not based on Mr. Nemechek's personal knowledge. I agree. Rule 56(c) provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Aside from Mr. Nemechek's assertions concerning <u>his</u> request that the EEOC issue a Notice of Right to Sue, the remaining allegations in his affidavit are not "made on personal knowledge."

Therefore, I will not consider Mr. Nemechek's affidavit in resolving the issues raised in Defendant's Motion.

On the record before me, there is simply no evidence that Plaintiff has exhausted his administrative remedies regarding his ADA claim. Plaintiff admits he has not received a Notice of Right to Sue, and there is no evidence that the charge of discrimination Plaintiff submits as an exhibit to his Response was filed with the EEOC or the Colorado Civil Rights Division under oath. Moreover, the affidavit of Ed Hohman, submitted in support of Defendant's Motion, states that Defendant has never received any copy of an administrative charge of discrimination filed by Plaintiff with the EEOC or any state agency, and that Defendant has never been contacted by the EEOC or any state agency to investigate a charge of discrimination by Plaintiff. I find that Plaintiff has failed to exhaust his administrative remedies with respect to his ADA claim and, therefore, I must dismiss Plaintiff's first claim for relief under the ADA for lack of subject matter jurisdiction.

        2.    <u>Contract Claims</u>

I next address Defendant's assertion that Plaintiff's contract claims, set forth in his second, third, and fourth claims for relief for breach of contract, promissory estoppel, and breach of implied contract, must be dismissed. Defendant contends that "it is undisputed that there is no express agreement of employment between the parties for anything other than at-will employment," and that the only allegations supporting Plaintiff's contract claims are "vague representations with no express terms of employment." In support of its argument, Defendant submits the Affidavit of Ed

Hohman, which states that "PTN had no employment contract with Mr. Davis for employment other than at will. It is PTN's intention to have all employees employed at will." Affidavit of Ed Hohman at ¶ 4.

The Tenth Circuit has held that, "[a]n employee who is hired in Colorado for an indefinite period is an 'at will employee' whose employment may be terminated by either party without cause or notice, and whose termination of employment does not give rise to a cause of action." *Orback v. Hewlett-Packard Co.*, 97 F.3d 429, 432 (10th Cir. 1996) (citing *Continental Airlines v. Keenan*, 731 P.2d 708,711(Colo. 1987)). However, this presumption of at-will employment is not absolute and can be rebutted under certain circumstances. *Schur v. Storage Technology Corp.*, 878 P.2d 51, 53 (Colo. App. 1994). It is the employee's burden, however, to demonstrate circumstances that would authorize application of an exception to the general rule. *Schur*, 878 P.3d at 53. An employee may rebut the presumption of at-will employment by proving that "an explicit term of the employment contract restricts the employer's right to discharge (such as an undertaking to discharge only for cause), or that an employer's policy statement restricting such right has been properly accepted as part of that contract or relied upon by the employee under circumstances giving rise to promissory estoppel." *Id*. However, absent "special consideration" or "an express stipulation as to the duration of employment, a contract for permanent employment is no more than an indefinite, general hiring terminable at the will of either party." *Id*.

"The burden of showing that no genuine issue of material fact exists is borne by the moving party. *EEOC v. Horizon/CMS Healthcare*, 220 F.3d 1184, 1190 (10th Cir.

2000). The movant need not show an absence of issues of material fact in order to be awarded summary judgment, nor must it negate the non-movant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rather, it must only allege an absence of evidence to support the opposing party's case and identify supporting portions of the record. *Celotex*, 477 U.S. at 323. "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Id.* at 322-23, 325. "The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; see Fed. R. Civ. P. 56(e).

In his Response to the Motion to Dismiss his contract claims, Plaintiff admits that "Defendant had no employee handbook or set of employment rules it promulgated to its employees. . . . Defendant did not advise Mr. Davis or its other employees that their employment was terminable at will, nor did it adopt a system of progressive discipline." *Plaintiff's Response to Mtn.*, pg. 2. Plaintiff asserts, however, that "Defendant Post Tension [sic] failure to adopt specific employment standards, rules and guidelines constituted an intent to vary the at-will employment relationship," that "Defendant represented that Plaintiff's employment would continue indefinitely," and that "Plaintiff Robert Davis' employment relationship with Defendant was not at-will, based upon his length of service, raises and promotions and the oral representations of Defendant." *Plaintiff's Response to Mtn.*, pg. 12 ("Statement of Disputed Facts"). In support of these allegations, Plaintiff submits a letter dated August 21, 1996 on Defendant's letter-head, which states "To Whom It May Concern: Robert Davis has been working in our employ

since 8/4/89. I am confident in his continued employment here." *Plaintiff's Response to Mtn.*, Exhibit 1.

At this stage of the proceedings, where Defendant has demonstrated an absence of evidence to support Plaintiff's case, the burden shifts to Plaintiff, as the non-moving party, to demonstrate " specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 322-24; Fed. R. Civ. P. 56(e). While Plaintiff's Second Amended Complaint alleges that "a contract existed between Plaintiff and Defendant," Plaintiff has not submitted any evidence of an express written or oral agreement between himself and Defendant, or a specific policy statement indicating that Defendant agreed to restrict its right to terminate Plaintiff. *Second Am. Comp.* ¶ 65. In connection with his third claim for relief for promissory estoppel, Plaintiff has not shown, through affidavit or other competent evidence, that Defendant made representation to Plaintiff that certain "policies and/or procedures regarding his employment would be followed." Other than the allegations in his Second Amended Complaint, and the unsupported assertion in his Response that "Defendant represented that Plaintiff's employment would continue indefinitely," Plaintiff has not demonstrated what Defendant's alleged employment policies and procedures entailed, and when and how the alleged policies and procedures were conveyed to him.

Nor has Plaintiff presented any evidence of any implied promises. Plaintiff's unsupported allegations concerning Defendant's verbal statements "that Plaintiff's employment would continue, provided that he performed in a satisfactory manner," are not sufficient to establish an implied contract. *Second Am. Comp.* ¶¶ 73-77; *Schur*, 878

P.3d at 53. Nor is Plaintiff's vague assertion that "Defendant represented that Plaintiff's employment would continue indefinitely" is not sufficient to create a material issue of fact as to this claim. In addition, the statement in the August 21, 1996, Letter that "I am confident in [Plaintiff's] continued employment here," is insufficient to rebut the presumption of at-will employment. I also reject Plaintiff's assertion that Defendant's failure "to adopt specific employment standards, rules and guidelines constituted an intent to vary the at-will employment relationship." Defendant's decision not to adopt specific employment standards is evidence of Defendant's intent NOT to vary the at-will employment relationship.

In conclusion, I find that Defendant has demonstrated an absence of evidence to support Plaintiff's second, third and forth claims for relief for breach of contract, promissory estoppel, and breach of implied contract, and that Plaintiff has failed to meet his burden of demonstrating the existence of "specific facts showing that there is a genuine issue for trial." Therefore, Defendant is entitled to summary judgment in its favor as to these claims.

### 3. Damages

In addition to requesting dismissal of Plaintiff's second, third, and fourth claims for relief, Defendant also asserts that Plaintiff's contract claims "cannot support the requested award of compensatory, pain and suffering, non-pecuniary, and punitive damages, and must be stricken." Because I have granted Defendant's Motion and dismissed Plaintiff's second, third, and fourth claims in their entirety, I need not address this argument.

### 4. Outrageous Conduct

I now turn to Defendant's assertion that Plaintiff has failed to state a claim for outrageous conduct.

"The elements of outrageous conduct are: (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in such conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the defendant's conduct caused plaintiff to suffer severe emotional distress." *McCarty v. Kaiser-Hill Co., L.L.C.*, 15 P.3d 1122, 1126 (Colo. App. 2000). "Proof of the tort of outrageous conduct must consist of either an extreme act, both in character and degree, or a pattern of conduct from which the ineluctable conclusion is the infliction of severe mental suffering was calculated or recklessly and callously inflicted." *Gard v. Teletronics Pacing Systems, Inc.*, 859 F. Supp. 1349 (D. Colo. 1994).

"Although the question whether conduct is outrageous is generally one of fact to be determined by a jury, it is the initial responsibility of a court to determine whether reasonable persons could differ on the question." *McCarty*, 15 P.3d at 1126. "The level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high." *Id.* "Liability has been found only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* In *McCarty*, the plaintiff alleged that supervisors sought to drive him out of his employment through a pattern of intimidation and harassment. *Id.* at 1126. That harassment included not only psychological

harassment, such as threatening phone calls, but even physical intimidation in the form of two vehicular assaults. The plaintiff also alleged that "he was uniquely vulnerable to severe emotional distress and was singled out for subjection to harassment and intimidation." *Id.* The Colorado Court of Appeals held that the plaintiff had not presented sufficient evidence from which a jury could find that the conduct of defendants was outrageous. *See also Pascouau v. Martin Marietta Corp.*, 1999 WL 495621 (10th Cir. 1999) (no outrageous conduct even though plaintiff alleged that co-workers and supervisors frequently engaged in lewd discussions about sex and their sexual experiences, brought sexually suggestive materials into the office, speculated about the plaintiff's sexual preferences, called her nicknames referring to her breast size, and ridiculed and belittled her).

If, accepting all well-pleaded allegations as true and drawing all reasonable references in favor of plaintiffs, it appears beyond doubt that no set of facts entitle plaintiffs to relief, then the court should grant a motion to dismiss. *See Tri-Crown, Inc. v. American Fed. Sav. & Loan Ass'n*, 908 F.2d 578, 582 (10th Cir. 1990). Here, Plaintiff's claim for outrageous conduct is based on allegations that Defendant "calculated to deprive Plaintiff of workers' compensation benefits and other benefits of his employment," and "decided to terminate Plaintiff's employment after he suffered an injury while in the employ of Defendant Post Tension." *Second Am. Comp.* ¶¶ 88-93. These allegations, while sufficient to support Plaintiff's fifth claim for relief for wrongful discharge in violation of public policy, do not meet the high standard necessary to sustain a claim for outrageous conduct under Colorado law. *See Cronk v.*

*Intermountain Rural Elec. Ass'n*, 765 P.2d 619, 621 (Colo. App. 1988) (allegations that plaintiff was fired because he asked for a transfer and stated that he could not support the illegal policies of his supervisor were insufficient to establish a claim for outrageous conduct as a matter of law). Therefore, I find that Plaintiff's sixth claim for outrageous conduct claim must be dismissed.

### 5. Public Policy Wrongful Discharge

Plaintiff's fifth claim for relief for wrongful discharge in violation of public policy is based on allegations that "Defendant discharged Plaintiff because he had filed a claim for workers' compensation benefits." *Second Am. Comp.* ¶ 85. Under Colorado law, there is a public-policy exception to the at-will employment doctrine which is "grounded on the principle that an employer should be prohibited from discharging an employee for reasons that contravene substantial and widely accepted public policies." *Flores v. American Pharmaceutical Servs., Inc*, 994 P.2d 455, 458 (Colo. App. 1999). "An employer wrongfully terminates an at-will employee when the employer terminates an employee for exercising a statutory right or privilege." *Krauss v. Catholic Health Initiatives Mountain Region*, 66 P.3d 195, 203 (Colo. App. 2003).

Defendant does not move to dismiss Plaintiff's fifth claim for relief, but contends that certain categories of damages that Plaintiff has requested "fall within the exclusive jurisdiction of the workers compensation system." *Mtn. to Dismiss*, pg. 10. Specifically, Defendant contends that Plaintiff's request for punitive damages, pain and suffering, emotional distress, compensatory damages, and attorney's fees pursuant are not permitted in connection with Plaintiff's fifth claim for relief and should be stricken.

The Workmen's Compensation Act of Colorado ("Act") provides for medical treatment and compensation for temporary and permanent loss of income resulting from an employee's temporary or permanent disability when that employee is injured in the course and scope of his employment.  *See* C.R.S. § 8-40-101 *et seq*.  The Act "provides exclusive remedies for compensation of an employee by an employer for work-related injury."  *Trial Painting Co. v. Blair*, 812 P.2d 638, 641 (Colo. 1991).  However, the Colorado Court of Appeals has held that "since an employee is granted the specific right to apply for and receive compensation under the [Workmen's Compensation] Act, an employer's retaliation against such an employee for his exercise of such right violates Colorado's public policy.  And, the violation of such public policy provides the basis for a common law claim by the employee to recover damages sustained by him as a result of that violation."  *See Lanthrop v. Entenmann's, Inc.*, 770 P.2d 1367, 1373 (Colo. App. 1989).

I find that Plaintiff's allegations that he was discharged because he had filed a claim for workers' compensation benefits, state a proper claim for wrongful discharge in violation of public policy under Colorado law.  In his Response to the Motion, Plaintiff states that in connection with his fifth claim for relief, he is seeking "the economic damages that he was not compensated for the cause of his wrongful termination, which includes emotional distress."  *Response*, pg. 16.  It does not appear that Plaintiff is seeking attorney's fees in connection with his fifth claim for relief, nor does Plaintiff allege the existence of any statute or private contract that would allow for attorney's fees under the circumstances presented in this case.  *Bunnett v. Smallwood*, 793 P.2d

157 (Colo. 1990) (en banc); *Hedgecock v. Stewart Title Ins. Co.*, 676 P.2d 1208, 1211 (Colo. App. 1983).

Defendant contends, however, that pursuant to *Decker v. Browing-Ferris Indus. of Colo., Inc.*, 947 P.2d 937, 940-41 (Colo. 1997) and *Decker v. Browing-Ferris Indus. of Colo., Inc.*, 931 P.2d 436 (Colo. 1997), "general consequential damages, pain and suffering, mental anguish and the like are not available in connection with an employment contract claim." *Reply*, pg. 14.  The *Decker* cases "stand only for the proposition that, if a claim based on the violation of an express covenant of good faith is to be recognized, such a claim is a contractual one. It is not one sounding in tort." *Hoyt v. Target Stores*, 981 P.2d 188, 194 (Colo. App. 1998). Plaintiff's fifth claim for relief for wrongful termination does not depend on the existence of a private contract; rather this claim is grounded in the alleged violation of "a duty imposed by the state's legislative body . . .." *Lanthrop*, 770 P.2d at 1373. A claim for wrongful discharge in violation of public policy sounds in tort. *Rocky Mountain Hosp. and Medical Serv v. Mariani*, 916 P.2d 519, 521 (Colo. 1996); *see Genova v. Longs Peak Emergency Physicians*, 72 P.3d 454, 460 (Colo. App. 2003) (approving of jury instruction in a wrongful discharge/public policy case which permitted the jury to award economic damages, including back pay, and non economic damages including present and future pain and suffering, inconvenience, emotional stress, and impairment of the quality of life); *Hoyt*, 981 P.2d at 194 (affirming portion of judgment awarding compensatory and punitive damages for wrongful discharge in violation of public policy). Therefore, while Plaintiff may not seek compensation for medical treatment or for temporary and

permanent loss of income resulting from the injury that formed the basis for his worker's compensation claim, which are compensable solely under the Act, Plaintiff may seek damages flowing from his alleged wrongful discharge including tort damages.

III.   CONCLUSION

For the reasons set forth herein, it is hereby

ORDERED that Plaintiff's Request for Judicial Notice, filed December 12, 2005, is **DENIED**.   It is

FURTHER ORDERED that Defendant's Motion to Dismiss or for Summary Judgment at to Second Amended Complaint and Motion to Strike, filed November 30, 2005 (docket #59) is **GRANTED IN PART**.  Defendant is entitled to summary judgment in its favor as to Plaintiff's first, second, third, fourth, and sixth claims for relief, and these claims are dismissed with prejudice.

Dated:  June 27, 2006

BY THE COURT:
s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge